U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2008 MAR 31 P 3: 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

LISA SYKES and SETH SYKES, )
Individually and as Parents and Natural Guardians of )
WESLEY ALEXANDER SYKES, )
a minor child, )
 )
    Plaintiffs, )
 )
    v. )
 )
BAYER CORPORATION, aka ) Case No. 3:07 CV 660
BAYER CORPORATION, INC. ) Eastern District of Virginia
BAYER BIOLOGICAL PRODUCTS, ) Richmond Division
BAYER HEALTHCARE CORPORATION, INC., )
BAYER PHARMACEUTICALS CORPORATION, )
BAYER PHARMACEUTICALS CORPORATION, INC. )
Individually, and as )
Successor in Interest to Miles, Inc. )
 )
    Defendant )
 )

## MOTION TO QUASH SUBPOENA

COMES NOW Kathleen Seidel and moves this court, pursuant to Rule 45(3)(A) of the Federal Rules of Civil Procedure, to quash the subpoena issued by Clifford Shoemaker, Esq., on behalf of plaintiffs in the above-captioned case, Sykes v. Bayer, ordering her to appear in Manchester, New Hampshire, for deposition and document production on April 30, 2008. The subpoena is herewith attached as Exhibit A, and the Amended Complaint in Sykes v. Bayer as Exhibit B.

As grounds, Mrs. Seidel states the following:

1. I am a resident of the State of New Hampshire.

2. I am not a party to Sykes v. Bayer, and have had no personal acquaintance or contact with any

1

of the parties to it.

3. I am sole proprietor of the website http://www.neurodiversity.com, a directory and resource for information and opinion on autism, Asperger Syndrome, disability rights, and related subjects.

4. http://www.neurodiversity.com is not a legal entity, an organization or a business; rather, it is an Internet domain name that I own. My website is a one-woman labor of love, creativity, conviction and conscience. My husband, David Seidel, assists me with technical matters. I receive $50-$100/month in commissions from Amazon.com for the sale of autism-related books and other merchandise. Since the site's inception in 2004, I have received approximately $600 in miscellaneous contributions from autistic adults and parents of autistic children. This minimal income has helped to defray but has not completely covered website operating costs. I have not otherwise been paid by any person or organization for developing or maintaining the website, for writing, or for my political advocacy or charitable work.

5. http://www.neurodiversity.com includes a weblog in which I have published numerous articles and letters to newspapers, academic journals, scientists, clinicians, and policymakers. I have addressed disability-related public policy and research funding, the representation of autism in the popular media, the controversy over the role of vaccines in the causation of autism, the history of vaccine injury litigation, and the ethics of litigation-driven human subjects research and scientific publication by proponents of the hypothesis that autism is a consequence of vaccine injury or mercury poisoning. These articles and letters are copiously documented, and are primarily substantiated by publicly-available sources.

6. http://www.neurodiversity.com features numerous investigative articles in which I have reported on and criticized pediatric medical research in which Rev. Lisa Sykes, Mr. Clifford Shoemaker, and their colleague Dr. Mark Geier are closely involved; their efforts to compel removal of mercury-containing antimicrobials from FDA-approved medical products; and the "judicial advocacy" campaign of which Sykes v. Bayer is a part, through which they and their colleagues seek to assign liability to

2

pharmaceutical manufacturers, government agencies and health care providers for children's developmental disabilities. A selection of my articles is herewith attached as Exhibit C.

7. The attached Amended Complaint in <u>Sykes v. Bayer</u> alleges that "Minor Child Wesley Sykes, developed severe neurodevelopmental disorders associated with high mercury exposure levels as a result of HypRho-D® exposure in utero, and as a result he has suffered serious permanent injury." The complaint further alleges negligence, design defect and breach of warranties on the part of the manufacturer of HypRho-D®, Bayer Corporation, and its subsidiaries.

8. On March 26, 2008, I was served the attached subpoena issued on March 24 by Clifford Shoemaker, Esq.. The subpoena fails to identify Mr. Shoemaker as counsel to plaintiffs, and fails to indicate whether it was approved by a judge prior to service. The subpoena was issued barely four hours after I published "The Commerce in Causation" (included in Exhibit C), an article discussing Vaccine Injury Compensation Program cases in which Mr. Shoemaker served as petitioners' counsel.

9. The subpoena commands production of "all documents pertaining to the setup, financing, running, research, maintaining the website http://www.neurodiversity.com" – including but not limited to material mentioning the plaintiffs – and the names of all persons "helping, paying or facilitating in any fashion" my endeavors. The subpoena demands bank statements, cancelled checks, donation records, tax returns, Freedom of Information Act requests, LexisNexis® and PACER usage records. The subpoena demands copies of all of my communications concerning any issue which is included on my website, including communications with representatives of the federal government, the pharmaceutical industry, advocacy groups, non-governmental organizations, political action groups, profit or non-profit entities, journals, editorial boards, scientific boards, academic boards, medical licensing boards, any "religious groups (Muslim or otherwise), or individuals with religious affiliations," and any other "concerned individuals."

10. The subpoena violates my First Amendment right to freedom of religion by demanding

information about my religious beliefs.

11. The subpoena violates my Fourth Amendment right to freedom from unreasonable search and seizure because it is overbroad and general in character.

12. The subpoena is impermissible under Rule 26(b)(1) of the Federal Rules of Civil Procedure, which allows discovery of only those matters that are relevant to the subject of the action. None of the information requested in the subpoena can reasonably be anticipated to assist the court in determining the cause of Wesley Sykes' neurodevelopmental disorders, the truth of the plaintiffs' factual allegations, or the liability of Bayer Corporation for negligence, design defect, or breach of warranties. The subpoena therefore serves no legitimate evidentiary or investigatory function.

13. The materials and information demanded in the subpoena are subject to the journalist's privilege. Although I am unaffiliated with a traditional news organization, and am not compensated for my work except to the extent described above, I am a *de facto* citizen-journalist regularly engaged in the public dissemination of news and information, and the promotion of discourse and advocacy regarding issues of national importance. *See* Von Bulow v. Von Bulow 811 F.2d 136 ("[A]n individual successfully may assert the journalist's privilege if he is involved in activities traditionally associated with the gathering and dissemination of news, even though he may not ordinarily be a member of the institutionalized press."). As such, I am entitled to maintain the confidentiality of my work product and information sources.

14. The courts require civil litigants seeking to compel testimony from journalists to demonstrate that the information sought goes to "the heart of the matter" and is "crucial to [the plaintiffs'] case." Zerilli v. Smith, 656 F.2d 705, 713 (citation omitted); *see also* Grunseth v. Marriott Corp., 868 F. Supp. 333, 335 (D.D.C. 1994), *aff'd* 79 F.3d 169 (barring disclosure where the information sought is not "essential to establish liability"). The information demanded by the plaintiffs serves no such purpose, and no compelling public interest militates its disclosure. This is a personal injury lawsuit, not a criminal

4

prosecution. *See* Zerilli, *supra* at 712 ("[I]n the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege.").

15. Even if the subpoena were not unconstitutional, illegal and barred by the journalist's privilege, it is excessively intrusive in its terms. Plaintiffs and their counsel seek not only to rummage through records that they suspect pertain to themselves, but also through my family's bank records, tax returns, autism-related medical and educational records, and every communication concerning all of the issues to which I have devoted my attention and energy in recent years. I have a reasonable expectation of privacy with respect to this material. It would be wholly inappropriate for the court to compel me, a non-party to this civil action, to subject myself, my family, friends and acquaintances to the hostile scrutiny of plaintiffs in order to enable them to argue some point that would not even help to prove their case.

16. Even if the subpoena were not unconstitutional, illegal, barred by the journalist's privilege, and needlessly invasive, my appearance on April 30 would be unduly burdensome due to previously scheduled family commitments. Further, the subpoena lacks any indication that I would be reimbursed for my time or for the costs of compliance, including the potentially considerable costs of retaining counsel.

17. The subpoena was not issued in good faith because its manifest purpose is not to elicit information relevant to determining Bayer's liability for Wesley Sykes' medical and developmental problems, but to indulge his parents' and their attorney's curiosity about my motivations and associations; to aggressively communicate their suspicion that I am not merely a fellow citizen who openly, intelligently and conscientiously disagrees with their public statements and actions, but a covert agent of the government, the pharmaceutical industry, or some other hidden force; to disrupt my relationships with my associates and news sources; and to intimidate, harass and retaliate against me for exercising my constitutional right to report and express opinions about matters of widespread public interest in which plaintiffs and plaintiffs' counsel are involved. These are not legitimate reasons to invoke the judicial subpoena power. Indeed, in so doing, Mr. Shoemaker has engaged in a sanctionable abuse of his authority

as an officer of the court.

WHEREFORE, Kathleen Seidel prays her motion to quash this unconstitutional, unreasonable, irrelevant, excessive, invasive, burdensome, frivolous, and clearly retaliatory subpoena be ALLOWED.

Respectfully submitted this 31st day of March, 2008.

**KATHLEEN SEIDEL**

*/s/ Kathleen Seidel*

Kathleen Seidel
68 Burke Rd.
Peterborough, New Hampshire 03458
anima@neurodiversity.com
(603) 924-7982

## CERTIFICATE OF SERVICE

I hereby certify that that on the 31st day of March, 2008, a true copy of this pleading was served by first-class mail on Mr. Clifford Shoemaker, at 9711 Meadowlark Road, Vienna, Virginia 22182.

31 March 2008

*Kathleen Seidel*
Kathleen Seidel
68 Burke Rd.
Peterborough, New Hampshire 03458
anima@neurodiversity.com
(603) 924-7982

7