UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE
_____

| | |
|---|---|
| Lisa Sykes, et al., | |
| Plaintiffs, | 1:08-mc-13 |
| v. | 3-07 CV 660 |
| | Eastern District of |
| Bayer Corporation, | Virginia |
| Defendant. | |

_____

MEMORANDUM IN RESPONSE TO ORDER TO SHOW CAUSE

By order entered April 21, 2008 the Court ordered Clifford Shoemaker of Vienna, Virginia to show cause why he should not be subject to sanction under Rule 11 of the Federal Rules of Civil Procedure for serving a subpoena upon Kathleen Seidel. The court indicated two areas of concern, the issuance of a subpoena from a court other than the District of New Hampshire and whether the subpoena was oppressive and issued for an improper purpose.

FACTS

Ms. Kathleen Seidel admittedly leads campaigns by like-minded persons to harass any person who files a suit claiming that vaccines or the vaccine preservative Thimerosal (a mercury based drug preservative),

1

together or separately are linked to autism. This case, in the Eastern District of Virginia, is such a claim. Thimerosal, which was a preservative in RhoD, was administered to Rev. Lisa Sykes during her pregnancy with her son Wesley Sykes. The suit, initially filed within the Vaccine Injury Compensation Program in the United States Court of Claims, removed from that program in 2002 and filed in the Eastern District of Pennsylvania in 2006 and transferred to Virginia, alleged that Thimerosal caused Wesley to become autistic. Since this Court issued the Order To Show Cause, the case in the Eastern District of Virginia has been dismissed by stipulation of the parties.

Rev. Sykes, her witnesses and her attorneys have been the targets of a campaign of malicious harassment by Ms. Seidel and her co-conspirators. In her web site, Neurodiversity.com, Ms. Seidel has made it abundantly clear that this harassment is due to their participation in this lawsuit. It is believed that Ms. Seidel has been assisted in her efforts by the defendant, directly or indirectly alone or in concert with other manufacturers of these drugs. Ms. Seidel's efforts are to deter by intimidation persons injured by vaccines from bringing any action claiming an injury due to thimerosal or a vaccine and to deter witnesses from appearing in any such case including

the case at bar. It is believed that a party to this action or someone associated with that party is one of Ms. Seidel's co-conspirators.

Ms. Sykes is a minister in the United Methodist Church. After this action was commenced in the Eastern District of Pennsylvania, Ms. Seidel commenced a campaign to destroy Rev. Sykes reputation and thus, to jeopardize her ministry. She has written to the Council of the Bishops of the United Methodist Church, asserting that Rev. Sykes, by filing a lawsuit was dishonest and corrupt. This is a direct attack on a litigant's reputation for honesty and when made to her employer is an attempt to injure her employability.

Mark Geier, a doctor who was listed as an expert witness in this case, has received harassing letters, medical journals, received letters from Ms. Seidel demanding that articles offered for publication by Dr. Geier be rejected, business opportunities have been obstructed or destroyed, charges have been filed by a person affiliated with Ms. Seidel with State licensing authorities and with Federal officials.

When Rev. Sykes and her child's treating physician were to speak at a conference sponsored by the United Methodist Church, Ms. Seidel organized a campaign directed at church officials to prevent them from appearing due to their participation in this case.

Ms. Seidel's website contains case specific documents, many posted almost immediately when, or even before, they become accessible to the public due to filing in Court or posting by an agency. She has commented on or published copies of other documents which plaintiff has reasonable grounds to believe she could have only received at that time due to some relationship with a party to this action.

The subpoena issued in this matter sought information as to Ms. Seidel's sources of information and funding to attempt to identify the scope of the conspiracy i.e. to determine if any connection with the defendant, or any organization with which the defendant is affiliated, exists.

I

THE SUBPOENA WAS PROCEDURALLY PROPER

Mr. Shoemaker, an attorney admitted to practice in the Eastern District of Virginia, where the case in issue was pending, signed the subpoena in issue. The subpoena was issued by Mr. Shoemaker as an officer of the United States District Court for the District of New Hampshire.

Federal Rule of Civil Procedure 45 (a)(3) provides in relevant part:

> **…An attorney also may issue and sign a subpoena as an officer of:**
>
> (A) a court in which the attorney is authorized to practice; or

> (B) **a court for a district where a deposition is to be taken or production is to be made, if the attorney is authorized to practice in the court where the action is pending**.

Thus, the subpoena in issue conformed to the requirements of the Federal Rules of Civil Procedure.

II

THE SUBPOENA WAS NOT AN ABUSE OF PROCESS

Under Rule 26 of the Federal Rules of Civil Procedure, parties to litigation may discover all relevant, non-privileged information. A party:

> may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. **The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.**

(Emphasis added.)

Discovery of Ms. Seidel, who received the subpoena here in issue, was due to the suspicion that Ms. Seidel is being assisted by the defendant, directly or indirectly, in an effort to obstruct justice.

The United States District Court for the Eastern District of Virginia may use its inherent power to punish litigation misconduct with the ultimate sanction of default where the improper conduct has seriously interfered with

a litigant's ability to present their case. See: <u>Shepherd v. American Broadcasting Companies, Inc.</u>, 62 F.3d 1469, 1473 (9th Cir., 1995). Indeed, "the judiciary-especially the court before which the primary misbehavior took place-may exercise its supervisory power to make it clear that the misconduct was serious, …and that steps must be taken to avoid a recurrence of this chain of events." <u>United States v. Simpson,</u> 927 F.2d 1088, 1090 (9th Cir.1991).

Therefore, the extent and origin of Ms. Seidel's information about this case and its participants was relevant to issues before the Eastern District of Virginia. Indeed,

> 42 U.S.C. 1985-2 provides:
>
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

This case is in a Court of the United States. This statute is directed at preventing the intimidation of any witness in any case pending in such a court. Forbidden harassment is proved where there is: (1) a conspiracy by the defendants; (2) to injure a party or witness in his or her person or property; (3) because he or she attended federal court or testified in any matter pending in federal court; (4) resulting in injury or damages to the plaintiff. 42 U.S.C. § 1985(2); cf. Chahal v. Paine Webber Inc., 725 F.2d 20, 23 (2d Cir.1984).

Dr. Mark Geier, has been the subject of a concerted campaign of harassment, including actions injuring his business, his professional reputation and indeed challenges to his mecical license, all due to his participation in this action and perhaps others, all in the Courts of the United States. The complaint about his license was filed by an associate of Ms. Seidel, fulfilling the requirement that the injury be the result of a conspiracy. But, Ms. Seidel proudly declares on her web site that she is assisted by others. Therefore:

> …plaintiffs who "have proved that they were denied [employment opportunities as a result of a conspiracy] because they previously had instituted legal actions to vindicate their federal rights" have made out claims under section 1985, even where they had no constitutionally protected property interest in the job. See Irizarry v. Quiros, 722 F.2d 869, 871 (1st Cir.1983); see also Wright v. No Skiter Inc., 774 F.2d 422 (10th Cir.1985) (plaintiff alleging that the defendants conspired to defeat his low bid for a contract in retaliation

7

for his bringing a federal suit states a claim under § 1985(2)). As the court in Irizarry explained, " '[p]roperty' here must include any economic damage that would be recognized in an ordinary tort suit." Id.

Portman v. County of Santa Clara, 995 F.2d 898, 999-910 (9th cir 1993). The First Circuit has held that this statute arises from "federal power to protect the processes of federal courts and the exercise of federal rights." Irizarry v. Quiros, 722 F.2d 869, 871 (1st Cir. 1983).

Ms. Seidel's easy access to all information about this case and its participants, gives rise to the suspicion that some of her co-conspirators are agents of the defendant. If so, the defendant's goal is despoliation of evidence, i.e. destroying plaintiff's experts' ability to publish, or to practice medicine and, in addition, to ruin them financially. "(T)he word "witness" liberally to mean not only a person who has taken the stand or is under subpoena but also one whom a party intends to call as a witness. Deterrence or intimidation of a potential witness can be just as harmful to a litigant as threats to a witness who has begun to testify." Chahal v. Paine Webber Inc. , 725 F.2d 20, 24 (2d, Cir, 1984).

Ms. Seidel claims to be a mere mother of an autistic child and housewife who is dedicated to the cause of not treating Autism as she believes it is not a result of a neurological defect or injury, but is a natural

8

condition that should not be treated but left alone. She claims to be using only her own funds and a few meager donations to produce her web site. That posture is difficult to credit.

The case specific information she has access to as well as the personal information on the parties and witnesses is both difficult and expensive to obtain. Considering the breadth and scope of Ms. Seidel's website (www.neurodiversity.com), it is not unreasonable for plaintiff's counsel to believe it is supported in some part by the defendant or by some organization dedicated to harassing this plaintiff and her witnesses in order to discourage recourse to the Courts by anyone claiming that a vaccine injured a child. Ms. Seidel's activity, described in the declarations of Rev. Sykes and Dr. Geier, is well across the line between lawful comment and a federal conspiracy. If she is receiving any material, information or aid from the defendant or its associates, sanctionable misconduct and perhaps obstruction of justice has occurrred.

Ms. Seidel's claim of first amendment and journalistic privilege is unfounded. In Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), the Court held that the First Amendment does not provide a journalist a privilege against discovery of the editorial process when the journalist is a defendant in a defamation case as such discovery is relevant to

the issue of actual malice. <u>Id</u>. at 155, 169-70, 175, 99 S.Ct. 1635.  Here, Ms. Seidel is not a journalist as to the activity in question.  She is the self proclaimed leader of a conspiracy to obstruct justice and as such is not entitled to the limited privilege of a non-involved journalist, who is merely reporting the news.

Even a legitimate journalist may not assert the privilege where, as here, there is "a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." <u>In re Petroleum Prods. Antitrust Litig</u>., 680 F.2d 5, 7 (2d Cir.1982); and see discussion in <u>Bruno Stillman, Inc. v. Globe Newspaper Co</u>., 633 F.2d 583, 595-97 (1st Cir.1980), <u>Cusumano v. Microsoft Corp.</u>, 162 F.3d 708, 716 (1st Cir 1998).

In addition, Ms. Seidel has been at this for some time.  Her malice toward litigants, their experts and attorneys and her intent to discourage access to the Courts is admitted and well known.  Beyond actively joining in her conspiracy, 42 U.S.C. §1986 renders anyone who has the ability to stop this activity, who does not do so, liable to any injured party for any injury sustained.  Thus, the identity of persons feeding Ms. Seidel with information they know will be used by her to damage persons seeking access to the Courts, is relevant to the inquiry by an attorney of the United States District

10

Court of the Eastern District of Virgina, a court who's efforts to determine the truth have been hindered by Ms. Seidel.  That Court has the authority to act to protect the integrity of its processes.

The inquiry this subpoena was designed to facilitate was the examination of material relevant to the extent of Ms. Seidel's conspiracy to interfere with this case.  Ms. Seidel's records are the only source of such information, which would be highly relevant if any are associated with the defendant.   Therefore, the subpoena was proper under Rule 26.

## RULE 11

Rule 26 (5)(c)(1) provides that before a party or any person may file a motion for a protective order, they must certify that they have attempted to resolve any issue related to the subpoena.  No such attempt was made here.  While Ms. Seidel is not an attorney and claims to be representing herself, a claim also questionable due to the quality of her motion for a protective order, a Rule 11 claim cannot be entertained where no such attempt has been shown in this record.

Rule 11 requires that any motion for sanctions be served and it may not be filed until 21 days after such service to give the attorney or other person involved time to take corrective action if warranted.   While this is an Order to Show Cause initiated by the Court, it must be considered in the

context of the lack of notice of any of the issues raised by Ms. Seidel in her motion, which could have resulted in resolution if in fact the subpoena was excessive.

The rules also provide that the party issuing a subpoena must compensate the person for statutory costs and any cost involved in copying material sought. Thus, this subpoena could not have imposed any financial burden on Ms. Seidel. She had the right to demand payment of her actual copying expenses if any.

The subpoena is proper and was properly issued. If excessive in any particular way, that should have been dealt with by a discussion between Ms. Seidel and Mr. Shoemaker before any motion was filed.

## CONCLUSION

For all the reasons stated above the subpoena was properly issued for a proper purpose. Rule 11 sanctions are not appropriate. The proceeding initiated by the Order to Show Cause should be dismissed.

Dated, New York, N.Y.
   May 12, 2008                 /s/ John F. McHugh_____
                                        John F. McHugh
                                        Attorney for Clifford Shoemaker
                                        6 Water Street
                                        New York, N.Y. 10004
                                        212-483-0875

Law Office of Brian T. Stern
86 Locust Street
Dover, NH 03820
Telephone: (603) 742-7789

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 12, 2008, I electronically filed Memorandum in Response to Order to Show Cause with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following: John F. McHugh, Esquire, and I hereby certify that on May 12, 2008, I have mailed by United States Postal Service, the document(s) to the following non-registered participants: Kathleen Seidel, 68 Burke Road, Peterborough, NH 03458.

Dated: May 12, 2008          /s/ Brian T. Stern_____
                                             Brian T. Stern
                                             Bar No. 2441
                                             86 Locust Street
                                             Dover, NH 03820
                                             Phone: (603) 742-7789
                                             E-Mail: contact@sternlawoffice.com