UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Lisa Sykes, et al.,

        Plaintiffs,                1:08-mc-13

        V                        3-07 CV 660
                                    Eastern District of
Bayer Corporation,                        Virginia

        Defendant.

Mark Geier declares as follows:

    1. I am a medical doctor, hold a Ph.D. in genetics, am a fellow of the American College of Medical Genetics, and am a fellow of the American College of Epidemiology. I have published more than 100 scientific/medical studies. I have practiced clinical medicine for more than 25 years and I am licensed to practice medicine in the States of Maryland and Virginia. I was a witness in the captioned matter and I have appeared as an expert witness in numerous actions concerning adverse reactions to vaccinations. I have been the major target of the activity of Kathleen Seidel and if called to testify in this matter I would testify competently as follows:

    2. I am the favorite target of Ms. Seidel. Her effect on her readers is well established by the following authored by one of them in a discussion of contributions to Wikipedia, the free internet encyclopedia:

> I think its pretty incredible that, after decades rending himself to attorneys to attack vaccines, going way outside any plausible qualifications, sometimes giving ludicrous false testimony (eg "I must have missed a zero"), using a kitchen lab and bogus ethical approval to experiment on children Mark Geier should complain about Kathleen's credentials…

86:129.110.60 19:55, 13 August 2006 (UTC).

3. Her campaign has been continuous and malicious since I determined that there is substantial medical evidence that Thimerosal, a mercury laden compound used in many drugs at a preservative level is a cause of severe neurological damage to infants, including autism.

4. She has done an extensive study of my background. She inferred that I was paying a malpractice settlement, as if that was current. To the best of my knowledge in my twenty-eight years of being in private practice, I have been sued once as a physician in the early 1980s and once as a member of a Laboratory for which I worked in the early 1990s. Both of these suites occurred long ago and all were fully covered by insurance and none had anything to do with my work on vaccines.

5. Her efforts are more than mere disagreement with my opinions on vaccines. An associate of hers has filed a complaint against me with Maryland authorities based entirely upon her allegations about my attempts to treat children afflicted with autism. She was behind similar complaints

filed with the FDA. Both complaints were related to and designed to adversely affect my work with Wesley Sykes.

6. She has campaigned to have my articles rejected by medical journals. This has delayed publication of my research, directly affecting my credibility as a witness. My articles are all peer reviewed, which means that other medical professionals credited by the journal in question, have reviewed my research and found it credible.

7. I developed a protocol for the treatment of autism in those afflicted children with precocious puberty. These children tend to be violent and severely impaired. I found that these children have high levels of testosterone and that high levels of mercury in their tissue seemed to be associated with this. The Sykes family allowed me to be involved in the treatment of Wesley by administering Lupron. Wesley has made significant improvement following his treatment.

8. When this case was removed from the Vaccine Injury Compensation Program and filed against vaccine manufacturers and Bayer, a manufacturer of Rho(D)-immune globulin, I was working with the manufacturer of Lupron to set up tests to further evaluate the clinical benefits of Lupron therapy to patients with autistic disorders. Ms. Seidel launched a concerted campaign against the manufacturer which has

apparently significantly impacted my relationship with the Lupron manufacturer.

8. Although I testified in many vaccine cases, I did not attract her attention until my role in the Thimerosal cases became known. In January of 2006, as soon as this case was filed in the Eastern District of Pennsylvania, she began a campaign to destroy my reputation. She wrote to many journals concerning her perceived opinions regarding my credibility, asserting that I was not credible and essentially a quack. In some cases she succeeded in delaying or withholding publication of my work. I think it important to note that despite her attacks on my credibility, I was a treating physician and an expert witness in the recent <u>Poling v. HHS</u> case which is the first case in which HHS conceded that vaccines caused or significantly contributed to the development of autistic symptoms.

9. Other doctors I know of have seen the type of punishment imposed on doctors who will testify in vaccine cases and most will not testify as a result. Indeed, many doctors who have found a connection between vaccines and autism have been subject to disciplinary action of one kind or another. Thus the manufacturers do have substantial power and do obstruct efforts to investigate these issues. Our nation is now losing one child in every 150 to autism, four boys to each girl. This is a horrendous loss of

talent and as many of these children will require lifetime care; this loss will impose huge costs on our society to say nothing of the moral cost if these injuries are preventable. The efforts of the manufacturers/Ms. Seidel to obstruct justice in this case mirror their successful efforts to impede research to determine the cause of this epidemic. Ms. Seidel marches to their drum and her role in this was relevant to this matter. If there is no liability, why would anyone seek to hide the evidence?

    10. The scope of Ms. Seidel's capacity to dig up material on my past is incredible. I do not believe that she could do this without a lot of help. While I understand that she may be just a dedicated parent, but the cost of accessing some of these records is high. I also believe, after being the subject of her scrutiny for several years, that she may be receiving materials from industry investigators. She has information I would expect to face on cross examination by a well prepared attorney. A deposition would establish only if there is any connection between her and the defendant and that includes determining the source of her information and funds. She seems to have that information about me and I understand that such information is very hard to obtain.

    11. Ms. Seidel asserts that she believes that autism is a natural human condition and should not be treated. She, however, says she does not oppose

approved treatment. Approved treatment is always some protocol, which is discovered by accident or by the use of human trials on a theoretical possibility. She fanatically opposes any treatment, which is at all related to the possibility that mercury is associated with autism. It is inconceivable that any person would oppose treatments, which would moderate the disabling affects of autism or any other condition. It is very hard to believe that she is self motivated to support whole heartedly the position of the manufacturers that not only is there no connection between autism and mercury but that no research as to that possibility is to be allowed.

    12. As I do a lot of work in the Vaccine Injury Compensation Program I can state with some authority that there are less than twenty law firms nation wide willing to handle these cases as they are not sufficiently rewarding financially. Few doctors will testify for the same reason and due to the type of abuse Ms. Seidel provides as an apparent agent of the industry, to say nothing of the industries control of research funds which gives them terrific leverage over any doctor affiliated with the major teaching hospitals. Therefore, there is no question that she and her co-conspirators seek to discourage anyone form filing suits relating to mercury in vaccines and other drugs and certainly keeps expert witnesses from assisting.

Wherefore, I believe it is relevant to determine whether Ms. Seidel is receiving support from the defendant in any of these lawsuits for the purpose of attempting to obstruct justice. As Ms. Seidel has targeted the Sykes and their witnesses, it was particularly relevant to that matter.

I declare under penalty of perjury that the forgoing is true to the best of my knowledge and belief.

Dated, Silver Spring, MD
    May 12, 2008

_____
Mark Geier, M.D., Ph.D., FACMG, FACE