UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| LISA SYKES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 08-mc-13-JM |
| | ) | |
| BAYER CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE OF KATHLEEN SEIDEL TO
CLIFFORD SHOEMAKER'S RESPONSE TO COURT'S
SUA SPONTE ORDER TO SHOW CAUSE WHY
SHOEMAKER SHOULD NOT BE SANCTIONED FOR
<u>THE OVERBROAD SUBPOENA THAT HE SERVED ON SEIDEL</u>**

On April 21, 2008, the Court granted the pro se motion of Kathleen Seidel to quash an incredibly broad subpoena served on her by Clifford Shoemaker, a Virginia lawyer who was prosecuting a tort action in the United States District Court for the Eastern District of Virginia on behalf of plaintiffs Lisa Sykes *et al.*, against Bayer Corporation and several affiliated companies (whose names do not appear in the caption in this miscellaneous proceeding). Regrettably, Mr. Shoemaker has concluded that the only way he can defend his subpoena is by submitting affidavits, signed by himself, his client, and his star expert witness, that make a number of serious accusations against Seidel, who is accused of participating in a wide-ranging conspiracy to suppress the "truth" about the impact of trace elements of mercury in medicines, and to retaliate against those who oppose Bayer on this issue. Although Seidel objects to the contents of these affidavits, we are not submitting any counter-affidavits because, in our view, the Court need not make any findings about the truth of Shoemaker's rants against Seidel to decide the current question of sanctions. We do, however, suggest that the bases put forward by Shoemaker

not only do not support his opposition to sanctions, but tend to show that some sanctions would be appropriate.[1]

Plaintiff Lisa Sykes is the mother of an autistic child who believes that his condition was caused by thimerosal-containing vaccines and Rho(D) immune globulin, and by environmental mercury pollution. In addition to filing the underlying action against Bayer for damages that she believes were caused by Rho(D) immune globulin manufactured by Bayer's predecessor, Miles, Inc., Sykes is an impassioned leader of a political and educational campaign to promote general awareness of the problems she believes are created by the use of mercury-containing antimicrobials in medical products and to hold Bayer, and other pharmaceutical companies which she deems equally guilty of concealing harm caused by these products, socially and legally responsible for their alleged misdeeds. She has been joined in this campaign by Dr. Mark Geier and his son, Mr. David Geier, two scientists whose research purports to support the hypothesis that autism is a consequence of iatrogenic mercury poisoning. Numerous damages actions have been brought by various lawyers who have concluded that Sykes and the Geiers are correct in their analysis, even though the great weight of scientific evidence runs to the contrary.

Respondent Kathleen Seidel is also a mother. One of her children has Asperger Syndrome, one of several diagnoses on the "autism spectrum" – technically, autism and Asperger Syndrome are two of four diagnoses categorized in the Diagnostic and Statistical Manual of Mental Disorders as "Pervasive Developmental Disorders."  *See* http://www.neurodiversity.com/aboutus.html; Sanger-Katz, *A Forceful Voice in Autism Debate*,

---

[1] In the event the Court concludes that it needs a response to Mr. Shoemaker's factual assertions before it can rule on sanctions, Seidel is prepared to submit a detailed affidavit.

Concord Monitor (April 27, 2008), A-1, available at http://www.concordmonitor.com/apps/pbcs.dll/article?AID=/20080427/FRONTPAGE/804270376&template=single; Brooks, *What a Web of action[ab]le links we can weave*, Nashua Telegraph (April 9, 2008), available at http://www.nashuatelegraph.com/apps/pbcs.dll/article?AID=/20080409/COLUMNISTS03/933585002. Like Sykes, Seidel has become passionate about issues surrounding autism. However, she does not hold the makers of vaccines responsible for her child's condition. To the contrary, based on her own research and analysis of relevant materials, she agrees with the general scientific consensus that Sykes and her associates are wrong; indeed, she regards Sykes' claims as a dangerous delusion that has the potential to divert society from finding workable solutions to the problems faced by autistic children and adults, their families and communities, and the social institutions intended to support them. Seidel has worked as a librarian (in fact, she has a masters degree in library science), and she has put her considerable research skills to use to find, analyze and discuss written material about autism. http://www.neurodiversity.com/aboutus.html. Like Sykes, and relying on the very same First Amendment on which Sykes relies to publish **her** views, Seidel publishes her research and analysis on a comprehensive web site devoted to autism, disability, and related issues, http://www.neurodiversity.com. The website features an extensive "link portal" leading to over 10,000 popular and academic sources of information on over 300 subjects ranging from autism to left-handedness to hysteria. The website also includes over 150 original articles and letters, most of them published in weblog format at http://www.neurodiversity.com/weblog. Seidel has authored essays about the depiction of autism in the press and in nonprofit organizations' fundraising appeals, the history of autism as a

diagnostic category, and autism-related research and public policy development, as well as about the controversy over autism and vaccines.

Her published opinions about Sykes, the Geiers, Mr. Shoemaker and certain other lawyers who bring cases based on the theory of iatrogenic causation of autism are certainly not flattering. And given the power of the Internet as described by the Supreme Court in *Reno v. ACLU*, 521 U.S. 844 (1997), she is able to disseminate her findings and conclusions widely.[2]

There is great diversity of opinion about autism and related subjects, and feelings among advocates on various sides of the issue are intense. Solomon, *The Autism Rights Movement*, New York Magazine (June 2, 2008), available at http://nymag.com/news/features/47225/. Apparently, Sykes and Dr. Mark Geier, along with Mr. Shoemaker, simply cannot conceive of the possibility that a "mere mother . . . and housewife" (Shoemaker Mem. at 8; *see also* Shoemaker Response at 3; Sykes Decl. ¶ 6; Geier Decl. ¶ 10) might entertain views just as strong as their own, might be willing without compensation to spend her spare time exploring and addressing the issue, and might be able to match their own devotion to the issue by searching for, finding and disseminating relevant materials.[3] This disbelief leads them to conclude that Seidel must be engaged in a conspiracy with their various adversaries to drive them from the field by the force of her advocacy, and Sykes and Shoemaker freely admit that the main purpose of the subpoena

---

[2] "From the publisher's point of view, [the Internet] constitutes a vast platform from which to address and hear from a worldwide audience of millions of readers, viewers, researchers, and buyers. . . . Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, . . . the same individual can become a pamphleteer." 521 U.S. at , 853, 870.

[3] In fact, the great majority of web sites are the product of individual, eleemosynary endeavor by people who have become passionate about certain issues (or personalities) and have chosen to devote themselves to talking about them online.

that they sent Seidel was to learn whether this was so.

Specifically, Mr. Shoemaker admits that although in part, his subpoena to Seidel was justified because he was hoping that it might produce communications between Seidel and defendant Bayer, including proof that Bayer was feeding her documents and paying her to express her views on her web site, the subpoenas also had a broader purpose. Mr. Shoemaker was using discovery to ascertain whether he and Sykes (together with Dr. Geier) might have a basis to file suit against Seidel for defamation and for a "conspiracy" under 42 U.S.C. § 1985(3) to punish them for their own public advocacy on that subject.

Given this admittedly broad purpose, the subpoena was not limited to seeking communications between Seidel and Bayer. Instead, Shoemaker sought to compel Seidel to search through all of her files on the subject of autism (and any other "issue that was included on the website neurodiversity.com"). As a practical matter, she would have had to surrender every scrap of information, in paper or digital form, that she had painstakingly accumulated on **any** of more than 300 different subjects featured on her web site. She was required to find and provide any documents she had about Lisa Sykes or her family or her associates or attorneys or physicians (paragraph 1); any communication with any "member, employee or consultant" of the federal government (paragraph 3); any communication with any "member, employee or consultant" of any one of six corporations besides Bayer, or indeed of any company or other entity in "the pharmaceutical industry" (paragraphs 4 and 7); any communication with any "member, employee or consultant" of any "advocacy group, non-governmental organization, political action group, profit or non-profit organization" or other "concerned inividuals" including but not limited to the proprietors of more than 100 different weblogs (paragraph 5);

5

any use of PACER, "Lexus Nexus" [sic] or any other "legal search engine" (paragraph 8); any communications with religious groups (paragraph 9); and any communications with "journals, scientific/academic boards or medical licensing boards" (paragraph 10).[4]

Had the subpoena been limited to communications between Seidel and Bayer, or funds received from Bayer, the subpoena might at least have appeared to bear some relevance to the existing case. It would also have been very easy for Seidel to respond to such a subpoena, because there were no such payments, and Seidel did not receive any such communications. *See* Seidel Motion to Quash, at 2 ¶ 4 (describing how www.neurodiversity.com is financed). It was the astounding breadth of the subpoena, ranging far beyond any legitimate issue pertaining to Sykes' claims against Bayer, that made the subpoena abusive and burdensome, and that, we assume, led the Court to issue its *sua sponte* order about sanctions.

In that regard, the fact that Mr. Shoemaker and his client may have hoped to find a basis for suing Seidel, whether for defamation or for conspiracy, was not a proper basis for abusing the pendency of its case against Bayer – a case which, apparently, Sykes was on the verge of dismissing – as an excuse to go on a fishing expedition for a hoped-for claim against Seidel. A burdensome fishing expedition would have been bad enough, but a fishing expedition unrelated to the issues in the case in which the subpoena was issued can only be described as an abuse of process. And an abuse of process is a proper basis for imposing Rule 11 sanctions on Mr. Shoemaker. Moreover, the fact that Sykes and her lawyer may genuinely believe that they are

---

[4] Apparently, it was their hope that, once they forced Seidel to identify all of her available sources, they could then comb through her various statements to see if they could identify something they could sue her about for which she had not produced a written source.

the targets of a conspiracy, and that they were entitled to use the filing of a tort action against Bayer as a platform from which to pursue harassing discovery against a political adversary, does not excuse them from an award of sanctions. "An empty head but a pure heart is no defense." *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986).

Indeed, given the many different subjects covered by the web site, ranging far beyond autism, even the now-stated justification of seeking to investigate an alleged conspiracy against Sykes, the Geiers, and Shoemaker is too narrow to justify the demand for documents pertaining to "any issue" addressed on the web site. The only possible conclusion is that the subpoena represented a form of harassment intended to silence a critic.

Finally, Mr. Shoemaker protests that Rule 11 sanctions should not be awarded because Seidel did not meet and confer with him in an effort to narrow the issues before filing her motion to quash. At most, this argument might have been offered in response to Seidel's motion to quash, had Shoemaker deigned to file an opposition, although in the circumstances presented here – a grossly overbroad and abusive subpoena – the Court could well have exercised its discretion to excuse her failure to confer. But that motion has already been decided, and Mr. Shoemaker cannot excuse his own failures in connection with the subpoena by reference to Seidel's failure to call him personally about his abusive subpoena.[5] Moreover, although Seidel's failure to serve a Rule 11 motion – coupled with the fact that she was *pro se* – bars the Court from awarding Seidel her attorney fees as a sanction, it does not in any way limit the Court's own *sua sponte* authority to impose sanctions.

---

[5] In fact, after the *pro se* motion to quash came to Mr. Levy's attention, he agreed to help Seidel with a possible reply brief, and tried to reach Mr. Shoemaker in connection with the subpoena, both to advise that he was

We fully recognize that, just as the Geiers have sued other detractors for defamation and conspiracy, *Geier et al. v. Department of Health and Human Services et al.*, 1:05-cv-01749-TFH (D.D.C.) (dismissed May 15, 2006), Seidel runs some risk that they and Sykes may be able to recruit Mr. Shoemaker or some other lawyer to bring the tort suit against her that they served this subpoena to try to document, and to try to take this sort of discovery in connection with that case. She only hopes that the lawyer who represents them in such a case will have deep enough pockets to pay her own attorney fees and costs at the end, because she will certainly serve a Rule 11 motion at the outset of such a case to begin the running of the safe harbor period prescribed by Rule 11(c)(2) of the Federal Rules of Civil Procedure. However, the reasons given by Mr. Shoemaker for having served that subpoena in **this** case do not provide any excuse that would avoid the Court's imposition of sanctions.

                                                      Respectfully submitted,

May 27, 2008                                                  /s/ Paul Alan Levy_____
                                                               Paul Alan Levy

                                                                Public Citizen Litigation Group
                                                                1600 - 20th Street, N.W.
                                                                Washington, D.C. 20009
                                                                (202) 588-1000
                                                             *(Admission Pro Hac Vice Pending)*

                                                           /s/ Jeffrey Spear_____
                                                             Jeffrey Spear (NHB #14938)

                                                             Orr & Reno
                                                             One Eagle Square
                                                             P.O. Box 3550

---

ready to enter the case and to suggest that Mr. Shoemaker narrow the subpoena. Mr. Shoemaker never responded to Mr. Levy. It is questionable, therefore, whether a telephone call to Mr. Shoemaker would have been fruitful.

                              Concord, NH 03302-3550
                              (603) 224-2381

                              Attorneys for Kathleen Seidel

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 27th day of May 2008, a copy of the above and foregoing document was served on counsel for Mr. Shoemaker via the Court's ECF system.

                                /s/ Jeffrey C. Spear
                              Jeffrey C. Spear